CLARK, J.
The Citrus Memorial Health Foundation appeals from a final summary judgment entered in favor of the Citrus County Hospital Board, appellee, which determined that chapter 2011-256, Laws of Florida, does not impair vested contract rights or violate Article I, Section 10, of the Florida Constitution. The special law which the legislature enacted at chapter 2011-256 significantly alters the parties’ contractual rights and is an unconstitutional impairment of their contracts so as to be prohibited by Article I, Section 10. Accordingly, the order granting summary judgment for Citrus County Hospital Board is reversed.
In 1990, Citrus County Hospital Board, a special taxing district, contracted with Citrus Memorial Health Foundation by entering into a Lease Agreement and an Agreement for Hospital Care which transferred the control and operation of Citrus Memorial Hospital from the Board to the Foundation. Amendments to those contractual agreements provide for the continuation of that arrangement until 2033. In 2011 the Florida Legislature enacted chapter 2011-256, which addressed the Foundation’s obligations and altered aspects of the parties’ contractual agreements.
Among other provisions, this special law requires that the Foundation’s budget be approved by the Board, limits the Foundation’s ability to borrow money without Board approval, and restricts the Foundation’s ability to undertake capital improvements without Board approval. In addition to those changes to the agreements, the special law alters the Foundation’s Articles of Incorporation by requiring Board approval of amendments to the Articles and the Foundation’s bylaws in some instances, and specifying that the Board’s trustees be appointed as a majority of the Foundation’s directors while giving the Board a right of approval as to all of the Foundation’s directors.
The Foundation filed an action for declaratory judgment in circuit court, seek *677 ing a ruling on the constitutionality of chapter 2011-256 in light of its impact on the contractual agreements between the Board and the Foundation, and in connection with the Foundation’s Articles of Incorporation. The Foundation asserted that chapter 2011-256 impaired vested contractual rights. The court entered summary judgment for the Board, accepting the Board’s assertion that the state can exercise regulatory power over the functions the Board had transferred to the Foundation. Consequently, the circuit court ruled that chapter 2011-256 does not violate the Florida Constitution’s due process protections or the Article I, Section 10, prohibition against laws impairing the obligation of contracts.
The circuit court’s ruling treats the Foundation as a public entity, referring to O’Malley v. Florida Insurance Guaranty Association, 257 So.2d 9 (Fla.1971), where a legislatively-created entity was accorded status as a public corporation used to implement legislative objectives within the state’s police power. However, unlike the public corporation in O’Malley, the Foundation was not created by the legislature and was used by the Board for the express purpose of avoiding statutory and constitutional limitations which would pertain to the Board as a public entity. Thus, O’Mal-ley does not apply here and the circuit court’s ruling disregards the true nature of the relationship between the Board and the Foundation.
It is undisputed that Citrus County Hospital Board was created for the purpose of operating hospitals and medical facilities in Citrus County. The Board provided that service until it contracted with the Foundation in 1990. That transfer of control and operation of Citrus Memorial Hospital resulted from a decision by the Board’s trustees to contract out that function to reduce expenditures by removing employees from the state retirement plan, and to create joint venture opportunities for the hospital. The Board’s trustees determined that while those actions would financially benefit the hospital, as a public entity the Board was precluded by section 122.061, Florida Statutes, and Article VII, section 10, of the Florida Constitution, from undertaking such actions. Upon that determination the Board then contracted with the Foundation. The circuit court’s characterization of the Foundation as a public entity disregards the purpose of the contractual agreements, which was to transfer the operational control of the hospital from the Board’s status as a public entity with such restrictions, to the private Foundation where such restrictions would not apply-
In considering the Foundation a public entity, the court proceeded to find that the changes made by chapter 2011-256 did not diminish the value of any constitutionally protected interest. The court applied the “impairment of contract” test from Pomponio v. The Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla.1979), without giving any effect to the accompanying test from Dewberry v. Auto-Owners Insurance Co., 363 So.2d 1077 (Fla.1978). In both Dewberry and Pomponio, the supreme court addressed the prohibition in Article I, Section 10 of the Florida Constitution with regard to laws impairing the obligation of contracts. In Dewberry the court cautioned that any legislation that detracts from the value of a contract is subject to the constitutional proscription, referring to Yamaha Parts Distributors Inc. v. Ehrman, 316 So.2d 557 (Fla.1975), which likewise indicates that virtually no degree of impairment is tolerated under Article I, Section 10. In Pomponio the court again referred to Yamaha Parts Distributors and explained that, although virtually no impairment may be tolerable, *678 some minimal impact in furtherance of the state’s police power might be allowed upon a balancing of interests as between the contract rights and the state’s interest in a permissible exercise of its police power. The Pomponio court then set out various criteria to be considered in connection with such balancing, emphasizing that in this context the state’s police power may only be exercised in the least restrictive means possible. Most significantly, the Pompo-nio court did not disavow or recede from Dewberry, which the supreme court has continued to apply in subsequent decisions. See In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla.1987); see also Cohn v. Grand Condominium Ass’n, Inc., 62 So.3d 1120 (Fla.2011); State Farm Mutual Automobile Ins. Co. v. Gant, 478 So.2d 25 (Fla.1985).
The continuing vitality of Dewberry is also recognized in other decisions, such as Lee County v. Brown, 929 So.2d 1202 (Fla. 2d DCA 2006), where it was suggested that a per se test under Dewberry applies, rather than a balancing test under Pompo-nio, when there is an immediate diminishment in the value of a contract. Accord, Coral Lakes Community Ass’n, Inc. v. Busey Bank, N.A., 30 So.3d 579 (Fla. 2d DCA 2010); see also, e.g., State v. Leavins, 599 So.2d 1326 (Fla. 1st DCA 1992).
In the present case, the circuit court reasoned that there was no impairment to the contracts between the Board and the Foundation because it was not shown that the taxpayers and residents of Citrus County were harmed by the enactment of chapter 2011-256. That reasoning does not recognize the impact on the Foundation’s contractual rights under its agreements with the Board or under its Articles of Incorporation. Cases such as Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla.1971), indicate that the corporate charter is a contract with the state, and other decisions such as Cohn v. Grand Condominium Ass’n, Inc., supra, indicate that statutory changes to an entity’s contractual rights of internal governance may run afoul of the Article I, Section 10, prohibition against the impairment of contracts. Even apart from the effect of chapter 2011-256 upon the Foundation’s Articles of Incorporation, the alteration of the Foundation’s contractual agreements with the Board whereby additional obligations were legislatively imposed in connection with those agreements, violates Article I, Section 10.
Ultimately, the legislative action in chapter 2011-256, as deemed valid by the circuit court, is a rewrite of the parties’ contractual agreements and the imposition of further obligations on the Foundation, while permitting the Board’s privatization of hospital management functions as described in Indian River County Hospital District v. Indian River Memorial Hospital, Inc., 766 So.2d 233 (Fla. 4th DCA 2000). Even if some public benefit might ensue from that privatization, by which the Board sought to avoid the restrictions on its undertakings as a public entity, the legislative changes in chapter 2011-256 cannot be countenanced under Article I, Section 10, of the Florida Constitution.
REVERSED.
VAN NORTWICK, J., concurs; RAY, J., dissents with opinion.